**UNITED STATES of America, Appellee,**

v.

**Kenneth G. HARVEY, Appellant.**

**No. 91–2026.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1991.
Decided Oct. 16, 1991.

Larry Curtis Pace, Kansas City, Mo., for appellant.

Marietta Parker, Kansas City, Mo., argued (Jean Paul Bradshaw, II, on the brief), for appellee.

Before ARNOLD, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

ARNOLD, Circuit Judge.

Kenneth G. Harvey appeals his conviction and sentence for possessing more than fifty grams of crack cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). We affirm both the conviction and sentence.

On December 7, 1989, Special Agent Carl Hicks of the Drug Enforcement Administration spotted the appellant at the Kansas City International Airport (KCI) as he was boarding an 8:50 a.m. Southwest Airlines flight to Los Angeles. Harvey's style of dress and the fact that he purchased a ticket at the last minute with cash made Hicks suspicious. Hicks alerted Los Angeles DEA agents to be on the lookout for Harvey at the Los Angeles airport. DEA Special Agent Bullock, Deputy Beers of the Los Angeles County Sheriff's Department, and several Los Angeles police officers greeted Harvey as he got off the plane. After interviewing Harvey and conducting a consent search, the officers arrested him for possession of crack cocaine.

While under arrest in Los Angeles, the law enforcement officers cut a deal with Harvey: they agreed not to prosecute him and not to revoke his parole, and he agreed to help them trap the other members of his drug conspiracy. Harvey's part of the deal included reporting to Deputy Beers every day, not committing any new crimes, and notifying Beers of any activity among the conspirators. Beers told Harvey not to participate in any drug trafficking without notifying him. Beers informed Special Agents Hicks and Bullock of Harvey's cooperation. Despite Harvey's agreement to

do so, he did not call Beers every day from December 7 to December 12, 1989.

On December 13, Special Agent Hicks saw Harvey and two companions get off a flight at KCI arriving from Los Angeles at 5:05 a.m. Hicks thought the three resembled Los Angeles gang members and looked like they were scanning the airport for police officers. When Hicks started questioning one of the three outside, Harvey immediately ran back inside to the baggage-claim area. Hicks followed Harvey into the building, identified himself, and asked if he could talk to Harvey. Harvey agreed. Hicks did not recognize Harvey as the man he saw on December 7. In response to Hicks's questions, Harvey said he was in town to visit his girlfriend and produced a one-way ticket, purchased with cash, in the name of J. Murdock, with no baggage-claim check attached. When asked to produce identification, Harvey could not find any, and his hands began to shake. Hicks asked Harvey if he had checked baggage, and if he was travelling alone. Harvey responded yes to both questions. On the basis of his observations, Hicks believed both of these answers were lies.

Hicks then asked Harvey to follow him to an alcove near the baggage-claim area. Harvey sat on the seat closest to the outside of the alcove. In the alcove, Hicks again identified himself as a DEA agent, and asked Harvey if he was carrying any drugs. Harvey answered no. When Harvey told Hicks he could not search his bag without a warrant, Hicks informed Harvey that he planned to keep the bag to get a search warrant, but that Harvey was free to leave. Hicks told Harvey to get any items he immediately needed out of the bag. While Harvey looked through his bag, Hicks noticed a long cylindrical bulge under one leg of Harvey's pants. Hicks reached down to touch the bulge, which was taped to Harvey's leg. At this point, Hicks placed Harvey under arrest. The cylinder taped to Harvey's leg contained

495.9 grams of crack cocaine. His bag contained another 6 grams of crack cocaine.

On January 8, 1990, a grand jury indicted Harvey on one count of possessing more than fifty grams of crack cocaine with the intent to distribute it. Prior to trial, he filed a motion to suppress the crack cocaine seized from him as having been obtained in violation of his Fourth Amendment rights. The magistrate judge [1] recommended denying the motion to suppress after holding an evidentiary hearing. With a few modifications, the District Court [2] adopted the magistrate judge's recommendation to deny the motion to suppress. After a two-day bench trial, the District Court found Harvey guilty. As required by 21 U.S.C. § 841(b)(1)(A), Harvey received the mandatory sentence of life without release after the government proved that Harvey had two prior felony drug convictions. This appeal followed.

Harvey raises three issues on appeal. First, he claims the District Court erred in denying his motion to suppress. He does not contend that any of the District Court's factual findings are clearly erroneous. Rather, he argues that the Court's legal conclusions from those facts—that Hicks did not violate his Fourth Amendment rights—are wrong. We disagree.

Our recent decision in *United States v. McKines*, 933 F.2d 1412 (8th Cir. 1991) (en banc), *petition for cert. filed*, No. 91–5481 (U.S. Aug. 14, 1991), makes it clear that a seizure for Fourth Amendment purposes did not occur until Hicks told Harvey he planned to keep Harvey's bag. Hicks never intimidated or coerced Harvey or restricted his freedom of movement. Although Hicks's taking of the bag would have amounted to a seizure, even this action would have been permissible under *United States v. Place*, 462 U.S. 696, 708–09, 103 S.Ct. 2637, 2645–46, 77 L.Ed.2d 110 (1983). By the time Hicks informed Harvey that he planned to keep the bag in

---

**1.** The Hon. John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

**2.** The Hon. Howard F. Sachs, Chief Judge, United States District Court for the Western District of Missouri.

order to get a search warrant, he had a reasonable, articulable suspicion that Harvey had drugs in the bag. Similarly, Hicks's touching of the bulge on Harvey's leg did not violate Harvey's Fourth Amendment rights. When Hicks spotted the bulge in Harvey's pants leg, the known facts became sufficient to establish probable cause. We affirm the District Court's denial of the motion to suppress.

■ Next, Harvey argues that insufficient evidence supports his conviction. At trial, the chief issue in dispute was whether Harvey possessed the requisite intent to distribute the cocaine seized from him. He claims that at the time of his arrest he was working as an undercover agent for Los Angeles law-enforcement officers and was therefore entitled to immunity from prosecution. Although the District Court could not completely rule out the possibility that Harvey may have been acting as an informant, it found beyond a reasonable doubt that the intent to distribute the cocaine was Harvey's "dominant motive for the trip." Memorandum and Order, *United States v. Kenneth G. Harvey*, No. 90–00006–01–CR–W–6, slip op. 4 (W.D.Mo. Aug. 6, 1990) (footnote omitted). In reaching this conclusion, the Court explicitly noted Harvey's failure to call Deputy Beers about the drug delivery and to inform Hicks of his role as an informant at the time of his arrest. Deciding whether to credit Harvey's testimony on the intent issue was the job of the District Court, as the trier of fact in this case. We will not disturb its factual findings, and consequently affirm Harvey's conviction as supported by sufficient evidence.

■ Harvey's third argument on appeal is that his sentence of life without parole is cruel and unusual punishment under the Eighth Amendment. He claims that the Eighth Amendment requires "an extensive proportionality analysis ... in cases involving sentences of life without parole." Appellant's Brief at 22 (citing *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). We disagree. In *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the Supreme Court held that a mandatory life sentence without the possibility of parole for a first drug conviction did not amount to cruel and unusual punishment. Although a majority of the Court did not agree to what extent the Eighth Amendment requires proportionality review in non-capital cases, this much was clear: regardless of what kind of proportionality review is required, a life sentence without parole for a drug crime of Harmelin's magnitude (he was convicted of possessing over 650 grams of cocaine) is not cruel and unusual punishment. We see nothing to distinguish this case from *Harmelin*, except the fact that Harvey has two prior felony drug convictions. This difference does not weigh in his favor.

Harvey's additional claims that sentencing under 21 U.S.C. § 841(b)(1)(A) denied him effective assistance of counsel, and that his sentence violates the Due Process and Equal Protection Clauses are also without merit. We decline to discuss them further.

■ One other matter deserves comment. Chief Judge Sachs was troubled by the necessity of imposing a sentence of life imprisonment without release on Harvey, who was twenty-four years old at the time. He observed that "the prior drug offenses, although felonies, were not deemed serious enough to merit imprisonment and appear to be only technically within the statutory punishment plan." Sentencing Transcript at 14. The Court also viewed Harvey's "immaturity of judgment [as] a consideration." *Ibid.* The Court then recommended that Harvey be given executive clemency after serving fifteen years. In that event, the Court added, a period of ten years of supervised release would be added to the sentence. We agree with this recommendation. As the Supreme Court noted in *Harmelin*, 111 S.Ct. at 2702, executive clemency is one of the "flexible techniques" for modifying sentences. The existence of these techniques is one reason for the Supreme Court's holding that the type of sentence imposed in this case does not violate the Eighth Amendment.

We instruct counsel for the United States to deliver a copy of the sentencing tran-

script and of this opinion to those persons within the Department of Justice whose responsibility it is to consider requests for executive clemency.

The judgment is affirmed.