UNITED STATES of America, Appellee,

v.

Paul MARTIN, Appellant.

UNITED STATES of America, Appellee,

v.

Ceasear VAUGHN, Jr., Appellant.

Nos. 91–2053, 91–2145.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1991.

Decided March 23, 1992.

Donald Wolff, St. Louis, Mo., argued, for Paul Martin.

Mary Schroeder, St. Louis, Mo., argued, for Ceasear Vaughn.

John Hall, Asst. U.S. Atty., St. Louis, Mo., argued, for U.S.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Appellants, Paul Martin (Martin) and Ceasear Vaughn, Jr. (Vaughn), were convicted of all charges in a joint drug trial. Both were convicted of violating 21 U.S.C. § 846 (1990) (conspiracy to possess and distribute cocaine) and 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii) (1990) (possession with intent to distribute cocaine). Martin was also convicted of three other counts of drug possession and distribution, one count of filing a false tax return in violation of 26 U.S.C. § 7206(1) (1987), and one count of failing to file a tax return in violation of 26 U.S.C. § 7203 (1988). Vaughn was sentenced by the district court[1] to 121 months in prison and Martin was sentenced to 168 months.

Martin claims on appeal that the evidence was insufficient to support his conviction on the three possession and distribution counts not involving Vaughn. Vaughn complains of (1) a prejudicial failure to sever his case from Martin's, (2) an improper airport detention leading to a search for and seizure of prejudicial evidence, and (3) a prejudicial photograph that was improperly admitted. We affirm.

## MARTIN

█ Claiming insufficiency of the evidence, Martin filed a motion to set aside the verdict on counts III–V, which related to his drug activities with three other drug coconspirators besides Vaughn. The district court denied the motion. In evaluating appellant's challenge to the sufficiency of the evidence on appeal, we apply the familiar standard that we must view the evidence in the light most favorable to the government and we will only reverse if a reasonable juror must have had reasonable

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

doubt about one or more elements of the charged offense. Martin claims that the testimony given by his alleged coconspirators was "incredible, insubstantial, contradictory and inconsistent." The record suggests otherwise.

■ Substantial common facts and circumstances corroborate each witness's testimony. The first witness, Franklyn Browne, was arrested in Puerto Rico when he was caught entering the country with drugs. In an attempt to reduce his sentence he cooperated with government officials and testified about a drug run he made for Martin in June, 1987 from Panama to St. Louis. The second witness, Darrin Taylor, testified to a similar trip in August, 1987. He was also arrested entering Puerto Rico with drugs and agreed to testify in exchange for leniency at sentencing. Finally, Tracey Martin (unrelated to Paul Martin but a classmate of his from high school) was arrested in St. Louis and agreed to testify in exchange for sentencing leniency. He testified that the drugs in his luggage in the St. Louis airport were purchased by him during a drug run for Martin from New York to St. Louis in February, 1989.

The jury knew what each witness had to gain by testifying. Each witness admitted having been arrested, cooperating for the benefit of sentencing, and to one or more prior false statements. That the witnesses had something to gain does not alone invalidate their testimony.

The first mentioned Browne and Taylor "runs" originated in Panama at the request of Anthony Pearson, an old army buddy of Martin. All four had bunked together in the same barracks in Panama for a short period before Martin left the army. Both Browne and Taylor flew into St. Louis from Panama. Records show that both stayed at the St. Louis airport Marriott Hotel on the dates of the alleged drug runs. Both testified about riding in Martin's Mercedes. Browne and Taylor later accompanied each other on another run, again at the request of Pearson, and both were caught entering Puerto Rico with drugs.

Both gave the details of their trips and remembered calling Martin's telephone number which was given to them by Pearson. They also recalled other details including quantities of cocaine and amounts of dollars. Tracey Martin, the high school classmate of Martin, was seen driving and parking the car of Martin's wife at the airport before he claimed luggage containing two kilos of cocaine. A high volume of calls was also traced from Martin's mobile phone to Tracey Martin's residence.

Others testified about Martin's drug activities including Martin's brother-in-law, a Panamanian citizen. He was stopped while driving Martin's car and traces of cocaine were found inside. An army sergeant testified to Martin's high style of living while in the army and DEA agents testified about other events relating to Martin that they had heard about or investigated. In light of the direct testimony, the disclosure to the jury of each witness's motivation for testifying, and the many corroborating facts and circumstances, we cannot say the evidence was legally insufficient to convict Martin on counts III–V.

VAUGHN

■ Vaughn's first two claims appear to us to be without merit. "We will not reverse a district court's decision not to sever absent an abuse of discretion that clearly prejudices the rights of a defendant." *United States v. Kindle*, 925 F.2d 272, 277 (8th Cir.1991). Although counts III–VII were only against Martin, much of the evidence supporting these claims also established the relationship between Vaughn and Martin who were convicted of conspiring together. Persons charged with a conspiracy are generally tried together. *Id.*

■ Vaughn argues he was found guilty solely because of a limited association with Martin. The record suggests there was more. Vaughn was married to Martin's sister, was observed purchasing tickets for Pearson and himself for a trip between drug source cities, returned from the trip with Martin who was en route from Panama, traveled to New York and back with Martin, and was found with drugs in his baggage upon returning from New York.

The evidence against Vaughn was not complex and we believe it was very susceptible to jury compartmentalization. Therefore, we cannot say that the district court abused its discretion.

█ Likewise, Vaughn's unlawful search and seizure argument does not withstand scrutiny. Vaughn and Martin were together at the St. Louis airport in January, 1988, purchased one-way tickets to New York with cash, were carrying virtually no luggage, ran from an officer who identified them from their previous trip together, and hurriedly boarded the plane before they could be questioned. They returned that same day from New York, got off the airplane at separate times though traveling together, were observed moving nervously through the airport, and finally met at the baggage claim area, though their only bag was a carry-on in Vaughn's possession. When asked by three officers who waited for them at the baggage claim area whether the officers could search the carry-on bag, they agreed. A one kilo brick of cocaine was found.

Vaughn specifically alleges that the circumstances were equivalent to a detention because other officers were nearby and that the alleged reasonable suspicion for a *Terry* stop was a pretext. He suggests that the testimony of Officer Thompson, who stated that the basis for the stop was Vaughn's nervous appearance and suspicious behavior, was fabricated and predictable. *See United States v. Nunley*, 873 F.2d 182, 184–85 (8th Cir.1989) (similar testimony by Officer Thompson in another drug case).

In the totality of the circumstances, it appears the officers had more than a reasonable suspicion and the presence of other officers in this situation did not result in an involuntary search or an otherwise unlawful detention as we currently view it in this circuit. *See United States v. McKines*, 933 F.2d 1412 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991). Furthermore, given the comparability of the circumstances between the two drug cases, we do not find Officer Thompson's "similar" testimony suspect.

Vaughn's final assignment of error gives us reason to pause, but fails to rise to the level of prejudice required for reversal. One of the exhibits admitted contained a picture, taken in Vaughn's home, of $130,-000.00 in currency. A small plastic bag containing a white substance appeared at the edge of the picture. The exhibit admitted was labeled "picture of money". This picture and a similar picture containing only the money had been reviewed by defense counsel before trial. The white substance shown in the picture was seized but prematurely destroyed. Defense counsel moved for exclusion of all evidence related to the destroyed drugs, including the picture, and the prosecutor decided not to attempt to offer any such evidence.

However, the questionable exhibit was offered into evidence as the "picture of money," and was received without objection. It was not reviewed at that time by defense counsel. Only later, during jury deliberations, were the actual contents of the exhibit ascertained by defense counsel because the jury requested an instruction as to the nature of the white substance. The court essentially instructed the jury only to consider the exhibit to the extent of the evidence presented during trial and not to assume anything about the white substance.

Vaughn argues that the picture of the drugs was improperly admitted since the evidence of drugs at his house was to be excluded. He suggests the switch in photographs may have been intentional and that the exhibit had a misleading label resulting in no objection. Vaughn suggests we should review his claim applying the extrinsic evidence rule or the contemporaneous objection rule, whereas the government argues we should apply the plain error rule.

█ The extrinsic evidence rule, if applicable, results in appellate review more favorable to Vaughn because we must reverse a conviction unless we can conclude beyond a reasonable doubt that the extrinsic evidence did not contribute to the ver-

dict; in other words, the error must be clearly harmless. *See United States v. Tebha*, 770 F.2d 1454, 1456 (8th Cir.1985) (where other evidence was not overwhelming and unadmitted exhibit that was sole evidence relating to a material issue was inadvertently given to the jury, conviction necessarily reversed); *accord Dickson v. Sullivan*, 849 F.2d 403, 405–06 (9th Cir. 1988) (reversal necessary where deputy sheriff who escorted jurors commented about past bad acts of defendant). Similarly, application of the contemporaneous objection rule, if such an objection is made, somewhat favors Vaughn since we may reverse if we find the district court abused its discretion by admitting prejudicial evidence. Application of the plain error rule, on the other hand, is not as beneficial because if there is no objection at trial, we only reverse if appellant shows that a purported error is "such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985).

In the present case, Vaughn made a general motion in limine but made no contemporaneous objection to the specific exhibit. Defense counsel did not ask to review the exhibit at trial when it was offered for admission. The exhibit clearly had some effect on deliberations as evidenced by the jury's question about the white substance. Although it appears the wrong exhibit was introduced, the exhibit was nonetheless properly admitted, without objection. Vaughn has failed to make any case for prosecutorial misconduct that might lead to extend the protections of the extrinsic evidence rule to this situation. Therefore, the plain error rule governs our review. Based on the conclusive evidence of drugs in Vaughn's bag and the significant circumstantial evidence of his activities—including his travels, dealings with Martin, large unexplained sums of money, and testimony by witnesses who did not know Vaughn but knew of Vaughn's activities with Martin—we cannot say that the admission of the wrong photograph had a substantial adverse effect on the defendant's rights.

We, therefore, affirm all convictions.