**UNITED STATES of America, Appellee,**

v.

**Darryl D. PURDUE, Appellant.**

**No. 90–1318.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 27, 1990.

Decided April 7, 1992.

Susan Hunt, Kansas City, Mo., argued, for appellant.

Lajuana M. Counts, Asst. U.S. Atty., Kansas City, Mo., argued, for appellee.

Before McMILLIAN, WOLLMAN, and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

The district court[1] sentenced Darryl D. Purdue to sixty-six months of imprisonment, a four-year term of supervised release, and a fine of $3,050.00 following Purdue's conditional guilty plea to a charge of knowingly and intentionally possessing, with intent to distribute, cocaine, a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Purdue appeals, contending that the district court[2] erred in accepting the magistrate judge's[3] report and recommendation that Purdue's motion to suppress evidence be denied. We affirm.

At approximately 5:20 a.m., September 2, 1988, Special Agent Carl L. Hicks, an eighteen-year veteran of the Drug Enforcement Administration, arrived at the Kansas City International Airport, where he had been involved in a drug interdiction program for the past year and a half.

Agent Hicks was accompanied by Detective Tom Taulbee of the Platte County, Missouri, Sheriff's Office. Both officers were dressed in plain clothes and wore no exposed badges or weapons.

Upon entering Terminal B at Braniff Gate 30, Hicks observed what he described as a "roughly dressed black male," later identified as Purdue, seated inside the terminal. Purdue was dressed in dirty clothing and was wearing a University of California at Los Angeles baseball cap, which led Hicks to form the opinion that Purdue might be a member of a Los Angeles street gang.

After Hicks had completed his normal routine of watching an incoming Braniff

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2. The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

3. The Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

flight from Los Angeles, he observed that Purdue had moved from his previous seat near Braniff Gate 30 to another seat near the Southwest Airlines ticket counter. Hicks was aware that Southwest Airlines' schedule included an 8:40 a.m. flight to Los Angeles.

Hicks noticed that Purdue was resting his head on a duffel bag sitting on his lap and was attempting to appear to be asleep each time he became aware that Hicks was looking at him. Having become suspicious that Purdue was transporting drugs, Hicks decided to conduct an interview with him. He approached Purdue, introduced himself, showed Purdue his badge, and asked Purdue if he could speak with him. Purdue agreed to do so, whereupon Hicks asked Purdue where he was traveling and whether he could produce some identification. Purdue told Hicks that he had been in Kansas City and St. Louis visiting friends and was going to fly back to Los Angeles. He told Hicks that he could not remember the names of his friends; likewise, he could not produce any type of identification. Hicks observed that Purdue's hands were shaking and that he was visibly nervous.

Hicks again showed his badge to Purdue, and told him that he was an agent with the DEA and was watching for drugs being smuggled through the airport. He asked Purdue if he had any drugs in the duffel bag, to which Purdue replied that he did not. Hicks asked Purdue if he could look inside the duffel bag, and Purdue agreed that he could do so. Upon attempting to look inside the duffel bag, Hicks discovered that it was locked. Hicks asked Purdue if he had a key for the lock. Purdue replied that he did and fumbled through his pockets in an apparent effort to retrieve the key. Purdue then stated that he was unable to find the key and that he may have left it with a friend who had been with him earlier that morning at the airport.

Hicks was able to open one zippered compartment on the outside of the duffel bag and found a nearly completely used roll of silver duct tape inside. Purdue told Hicks that the duct tape was a new roll that he had purchased to repair the duffel bag.

Hicks' inspection of the outside of the duffel bag, which appeared to be brand new, revealed that the bag had no silver duct tape attached to it. Hicks was aware that silver duct tape and other similar tapes are commonly used to package large packages of narcotics for sale.

As Purdue was searching for the key, he pulled from his pocket a piece of paper bearing the notation "$4 \times 17{,}000 = 68{,}000$." Upon examining the piece of paper, Hicks asked Purdue about the numbers. Hicks replied that he did not know what the numbers meant and that they were an equation that he must have doodled on the paper while he was talking on the telephone. The numbers were significant to Hicks, since his past experience in investigating drug trafficking in the Kansas City area made him aware that the price of a kilogram of cocaine in Kansas City was approximately $17,000.

Hicks asked Purdue where he lived and was told that Purdue sometimes stayed at the Vermont Hotel in Los Angeles. Hicks then asked Purdue for permission to look in Purdue's pockets for the key to the duffel bag. Purdue refused, whereupon Hicks decided to detain the duffel bag and to attempt to get a search warrant. He told Purdue that he would give him a receipt for the bag, seize it, and attempt to get a search warrant for it. Hicks asked Purdue for an address where the bag could be sent after the search or a telephone number where Purdue could be reached. Purdue responded that Hicks should just send the bag to the Vermont Hotel because he did not want to get anyone else involved. Hicks then seized the duffel bag and gave Purdue a receipt. Purdue told Hicks that he would be at the airport until his plane left for Los Angeles at 8:40 a.m.

At approximately 6:20 a.m., Hicks and Detective Taulbee walked away from Purdue to make a telephone call. Returning to the Southwest Airlines ticket counter area approximately ten minutes later, Hicks discovered that Purdue had apparently fled the airport.

Hicks and Detective Taulbee transported the duffel bag to the Platte County Sher-

iff's Office, where they searched the bag later that morning pursuant to a search warrant issued by the Platte County Circuit Court. The search revealed that the duffel bag contained a package containing approximately two kilograms of 87% pure cocaine.

Citing *United States v. Nunley*, 873 F.2d 182 (8th Cir.1989), Purdue contends that a seizure implicating the Fourth Amendment occurred at the moment Hicks displayed his badge and informed Purdue that he was looking for drugs.

Whatever the import of the holding in *Nunley,* our recent decisions make clear that a seizure for Fourth Amendment purposes did not occur until Hicks told Purdue that he planned to keep Purdue's duffel bag. *United States v. Harvey*, 946 F.2d 1375, 1377 (8th Cir.1991); *United States v. McKines*, 933 F.2d 1412, 1423 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991). *See also United States v. Galvan*, 953 F.2d 1098, 1102–03 (8th Cir.1992). Our inquiry, then, turns to whether Agent Hicks had a reasonable, articulable suspicion that Purdue might be transporting illegal drugs at the time Hicks told Purdue that he was going to seize the duffel bag. We conclude that he did. Without recounting the facts that gave rise to Hicks' suspicion, we are satisfied that, when considered in their totality and in the light of the facts that have been held to constitute reasonable suspicion in other cases, *see, e.g., Harvey, Galvan,* and *United States v. Martin*, 960 F.2d 59 (8th Cir.1992), we are satisfied that they were sufficient to support Hicks' decision to seize Purdue's duffel bag. Accordingly, the district court did not err in denying the motion to suppress.

The judgment of conviction is affirmed.