**UNITED STATES of America, Appellee,**

v.

**Larry Leroy RUDOLPH, Appellant.**

**No. 92–1084.**

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1992.

Decided July 22, 1992.

Rehearing and Rehearing En Banc Denied Sept. 10, 1992.

Bruce Aarestad, Fargo, N.D., argued, for appellant.

Gary Annear, First Asst. U.S. Atty., Fargo, N.D., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Larry Leroy Rudolph appeals from his conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e)(1). We affirm.

I.

On January 6, 1990, a Stutsman County, North Dakota, deputy sheriff stopped Rudolph for driving erratically. Rudolph had a juvenile passenger in his pickup who, Rudolph told the deputy, was his son. The deputy issued a citation to Rudolph and released him. Because he did not recall that Rudolph had any children, the deputy then contacted the dispatch center to ask whether it had information about the boy. The center advised the deputy that the boy was Rudolph's runaway nephew and that the boy should be picked up.

The deputy once again stopped Rudolph's vehicle. The officer approached the passenger side of the vehicle and noticed an open whiskey container on the floor. He asked Rudolph if there was other alcohol in the pickup. Rudolph answered in the negative and told the officer to look for himself. The officer searched the vehicle, found an old shotgun wrapped in a sleeping bag behind the seat, and arrested Rudolph.

Rudolph was charged in state court with a firearms violation. Those charges were later dismissed. In May 1991, Rudolph was charged in state court with possession of a handgun, which he had purchased for his sister and was transporting to her. Those charges were also dismissed. In August 1991, a federal grand jury indicted Rudolph for the January 1990 possession of the shotgun, and a jury found him guilty on that charge.

Because Rudolph had at least three prior felony convictions,[1] he was subject to the statutory mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). The district court[2] imposed the minimum sentence, stating that but for the mandated minimum sentence, it would not have sentenced Rudolph to such a lengthy term of imprisonment.

Rudolph contends on appeal that the district court erred 1) in refusing to suppress evidence of the shotgun found in the pickup truck; 2) in refusing to dismiss the indictment because of the nineteen-month delay between the date of the offense and the date of the indictment; and 3) in imposing the mandatory minimum fifteen-year term of imprisonment.

II.

Rudolph first contends that the district court erred by refusing to suppress evidence found in the pickup. He argues that, while he agreed that the deputy could "look" in the pickup for alcohol, he did not give the deputy permission to touch or to move any items.

A consensual search may not exceed the scope of the consent given. *United States v. Chaidez*, 906 F.2d 377, 382 (8th Cir.1990); *see also Honig v. United States*, 208 F.2d 916, 919 (8th Cir.1953) (A consent search is reasonable only if "kept within the bounds of the actual consent.").

Rudolph cites *United States v. Dichiarinte*, 445 F.2d 126 (7th Cir.1971), to support his argument that the deputy exceeded the scope of his consent. In *Dichiarinte*, the defendant consented to a search for narcotics. The agents, as they searched, read through the defendant's personal papers to determine whether he was involved in any criminal activity, then seized incriminating papers. The court found that the actions of the agents ex-

---

1. Rudolph has fourteen burglary and three larceny convictions.

2. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

ceeded what was necessary to determine whether the defendant had secreted narcotics among his papers. *Id.* at 131.

We believe that this case is distinguishable from *Dichiarinte,* as the deputy's search behind the seat of the pickup was well within the scope of Rudolph's consent. Rudolph told the deputy to look for other containers of alcohol. The deputy then searched behind the seat of the pickup, a likely place for such containers to be placed. Rudolph even pulled the back of the seat forward when the deputy could not work the latch. *See Chaidez,* 906 F.2d at 382 ("This type of cooperation [ (opening the trunk) ] evinces voluntariness."). It was at this point, and in this context, that the gun was found. Thus, the district court correctly refused to suppress the evidence found during the search.

Rudolph next contends that the district court erred by refusing to dismiss the indictment because it was handed down nineteen months after the time of the offense.

■ The due process clause plays a limited role in protecting defendants from oppressive delay.[3] *United States v. Bartlett,* 794 F.2d 1285, 1289 (8th Cir.), *cert. denied,* 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986) (citing *United States v. Lovasco,* 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977)). An indictment is dismissed for delay only when the delay "was unreasonable and substantially prejudicial to the defendant in the presentation of his case." *United States v. Savage,* 863 F.2d 595, 598 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989). Further, the "[d]efendant bears the burden of establishing that any delay was

unreasonable and that he suffered actual prejudice because of the delay." *Id.*

■ Rudolph claims that his defense was impaired by the passage of time. He argues that witnesses may have forgotten important details in the interim between the offense and the trial. He argues that law enforcement officers did not impress upon him the seriousness of the offense. Thus, he and other witnesses had no notice that they should remember certain details.

We cannot accept Rudolph's argument. The elements of the offense were largely uncontested: Rudolph was a felon, and the shotgun was found in his truck. The only element contested was whether Rudolph actually had possession of the gun. Rudolph admitted to the deputy and to his probation officer that he knew the gun was in the truck but that he had forgotten that it was there. The jury found that Rudolph was a felon and had been in possession of the gun. Rudolph cannot show that fresher memories would have made any difference to his defense, and thus he suffered no actual prejudice because of the delay.[4]

■ Last, Rudolph contends that the district court erred by sentencing him to fifteen years' imprisonment. He argues that in the light of his age (46 at time of sentencing) and poor health, the sentence amounts to life imprisonment, a punishment which is both cruel and unusual and disproportionate to the offense for which he was convicted. Rudolph also argues that his sentence should be reduced because of his diminished mental capacity.

The Eighth Amendment bars punishment which is cruel and unusual. The Supreme Court recently stated that "[s]evere, mandatory penalties may be cruel, but they are not unusual in the constitutional sense."

---

**3.** The Supreme Court has set out three interests courts should consider when determining whether a defendant has been prejudiced by a delay: 1) preventing oppressive pretrial incarceration; 2) minimizing anxiety and concern of the defendant; and 3) limiting the possibility that the defense will be impaired. *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *see also Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2692, 120 L.Ed.2d 520 (1992). The district court found that none of these considerations applied

to Rudolph. The interests set out in *Barker,* however, implicate the Sixth Amendment right to a speedy trial and apply to post, not pre-indictment delay. *See Doggett,* —— U.S. at ——, 112 S.Ct. at 2696 (1992) (Thomas, J., dissenting).

**4.** While there was some evidence that the gun may have been placed in the truck without Rudolph's knowledge when family members used the pickup to move Rudolph's mother to a new home, the jury obviously rejected that theory when it found that Rudolph had possession of the shotgun.

*Harmelin v. Michigan,* — U.S. —, —, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991). The Court went on to say that "a sentence which is not otherwise cruel and unusual [does not] become[ ] so simply because it is 'mandatory.'" *Id.* In *United States v. Harvey,* 946 F.2d 1375, 1378 (8th Cir.1991), we held that, whatever *Harmelin's* effect on the proportionality review requirements laid down in *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983), a mandatory sentence of life without parole imposed for a drug crime does not violate the Eighth Amendment. Nor, we believe, does a fifteen-year sentence imposed on a felon with fourteen previous convictions for crimes of violence. Rudolph, a person of marginal intelligence and a seeming incapacity to learn from his past mistakes, characterized by his counsel at oral argument as a "burned out" criminal, may not constitute the threat to society that Congress apparently thought would be lessened by the application of mandatory sentences under section 924(e)(1). Nevertheless, Congress has spoken, and in the light of *Harmelin* and *Harvey,* we cannot say that the sentence imposed upon Rudolph violates the Eighth Amendment. Thus, Rudolph's constitutional arguments fail.

As to Rudolph's argument regarding capacity, the Sentencing Guidelines provide that a sentencing court may reduce the sentence to be imposed "[i]f the defendant committed a non-violent offense while suffering from significantly reduced mental capacity." United States Sentencing Commission, *Guidelines Manual,* § 5K2.13 (Nov.1991). The court's authority to depart downward is limited, however, when a statutory minimum sentence is involved. In that situation, the court may depart below the minimum set by Congress only upon motion by the government and only to reflect substantial assistance by the defendant. 28 U.S.C. § 3553(e) (Supp.1992). Here, there was no motion from the government for a downward departure. Hence, the sentencing court properly rec-

ognized that it could not depart below the minimum.

The conviction and sentence are affirmed.

BRIGHT, Senior Circuit Judge, concurring separately.

I am obligated by the force of precedent to concur in the court's judgment in this matter. I write separately to comment upon the operation of the mandatory minimum set forth by Congress in 18 U.S.C. § 924(e)(1). In my opinion, it is a travesty to sentence Rudolph to a mandatory term of fifteen years imprisonment for possession of an old shotgun which he may not even have intended to use.[1]

In its headlong rush to appear tough on crime, Congress has enacted approximately 100 mandatory minimum penalties in over sixty criminal statutes. Congress apparently believes that stiff mandatory penalties deter would-be criminals. No less an authority than the United States Sentencing Commission has recently questioned this premise. *See generally* Michael Tonry, *Mandatory Minimum Penalties and the U.S. Sentencing Commission's "Mandatory Guidelines",* 4 Fed. Sentencing Rptr. 129 (1991).

Rather than create a uniform system of punishment, mandatory minimums enhance sentencing disparity. *See id.* at 130–32. They transfer sentencing discretion from the court to the prosecutor. *Id.* at 130, 132. Prosecuting attorneys "often do not file charges that carry mandatory minimums when the evidence would have supported such charges" and "us[e] the mandatory provisions tactically to induce guilty pleas." *Id.* at 130. Where possible, judges "often impos[e] sentences less severe than applicable mandatory provisions would appear to require." *Id.* Perhaps as a result, "substantial unwarranted disparities exis[t] in sentencing of defendants to whom mandatory minimums appl[y]." *Id.*

This case reflects the unfairness inherent in these mandatory minimum sentences.

---

**1.** As the majority opinion points out, Rudolph apparently knew that the gun was in the truck. He told his probation officer that it was broken and he intended to get it fixed. P.S.R. at 3. A

police officer who test-fired the shotgun, however, found that the weapon was operational. *Id.* The jury chose not to credit the conflicting evidence as to Rudolph's possession.

In another jurisdiction, perhaps, an overworked prosecutor might have struck a deal or left it to the state to prosecute.[2] Perhaps another defense attorney might have pressed for a deal, rather than incur the risk of a trial. Neither eventuality occurred in this case. Rudolph will go to prison for fifteen years.

This punishment, quite simply, is wholly out of proportion to the crime.[3] Rudolph will likely spend much of the remainder of his life in jail. He will pay and pay for, in the words of the majority, his "seeming incapacity to learn from his past mistakes." *Supra* at 470. His family will pay. And so will the public.[4] Nevertheless, this is the sentencing regime with which we are stuck until Congress, in its finite wisdom, changes its mind.

2. Possession of a firearm by a prior convicted felon is a Class C felony under North Dakota law. N.D.Cent.Code § 62.1–02–01 (1985 & Supp.1991). The maximum penalty Rudolph would have faced under state law is five years in prison, a $5,000 fine, or both. N.D.Cent.Code § 12.1–32–01.4 (1985).

3. Rudolph has 17 prior convictions, 14 of which are for burglary and three of which are for larceny. Although he has poor judgment and an inability to consider the consequences of his actions, his criminal history reveals no physical threats of violence. P.S.R. at 9–10. In addition, Rudolph is mildly mentally retarded. *See* Sentencing Tr. at 18, 31; P.S.R. at 9. Faced with this record, the district judge would have considered a more lenient sentence, had he not been hampered by the operation of the statutory mandatory minimum. *See* Sentencing Tr. at 36.

4. The average cost of incarceration in a federal facility is $17,909 per prisoner per year. *See, e.g., United States v. Quarles*, 955 F.2d 498, 505 n. 6 (8th Cir.1992) (Bright, J., concurring and dissenting).