UNITED STATES of America, Appellee,

v.

Amador Rodriguez CHAIDEZ, a/k/a Rodriguez Amador Chaidez and Amador Rodriguez, Appellant.

No. 89–1634.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1989.

Decided June 29, 1990.

378

Susan Felicia Spence, Springfield, Mo., for appellant.

Richard E. Monroe, Springfield, Mo., for appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

A jury convicted Amador Rodriguez Chaidez of violating 21 U.S.C. § 841(a)(1) (1988) by knowingly possessing cocaine with the intent to distribute it. On appeal, Chaidez contends that the district court[1] should have suppressed both cocaine found in the car that Chaidez was driving and statements he made while in custody. This appeal presents three questions: (1) Did Chaidez voluntarily consent to the search of his car?; (2) If so, was the cocaine discovered during a search that was within either the scope of that consent or one of the other exceptions to the warrant requirement?; and (3) Were Chaidez's inculpatory statements obtained in violation of his Fifth Amendment rights? After considering these questions, we affirm the judgment of the district court.

Missouri State Highway Patrol Trooper Jack McMullin stopped Chaidez for driving seventy-nine miles-per-hour in a fifty-five mile-per-hour zone on Interstate Highway 44 near Springfield, Missouri. Suppression Hearing Order ¶ 4. Chaidez produced a Texas Driver's License that identified him as a resident of El Paso, Texas. *Id.* ¶ 6.

---

**1.** The Honorable William R. Collinson, Senior United States District Judge for the Western District of Missouri.

McMullin and Chaidez then went to the Trooper's patrol car. In response to a question from McMullin, Chaidez said that he was going to Chicago. McMullin had not seen any clothes in the car driven by Chaidez, and he thought that someone who was traveling from Texas to Chicago would take clothes with them. Therefore, McMullin asked whether Chaidez had brought any clothes on the trip. Chaidez responded by stating that he had some clothes in the trunk of his car. "McMullin [then] asked the defendant if it would be okay for him to look in the car," and Chaidez started to get out of the patrol car. *Id.* ¶ 8. McMullin asked Chaidez to stay in the car, completed the appropriate sections of a search consent form, and handed it to Chaidez. Chaidez "immediately started to sign the form," but was stopped by McMullin, who told Chaidez to read the form before signing it. *Id.* ¶ 9. McMullin thought that Chaidez examined the form for a time "long enough ... to have read it" before signing it. *Id.* Although McMullin noticed that Chaidez spoke with a Spanish accent, and although one side of the consent form contained a Spanish translation of its text, McMullin showed Chaidez only the English side of the form. *Id.* ¶ 10.

After signing the form, Chaidez opened the car's trunk, which contained a duffel bag full of clothes. While inspecting the trunk, McMullin noticed that the back portion of the rear passenger seat, which abutted the trunk, looked as if it had been removed and replaced. *Id.* ¶ 12. He then opened one of the car's doors and examined the area near the back seat. *Id.* There, he observed some loose or missing screws in the car's back seat and rear panels, and he concluded that the seat's bottom cushion was raised above its normal position. *Id.*

McMullin then put his hand under the rear seat and felt a brick-shaped object which was taped to the bottom of the seat. *Id.* ¶ 13. When he removed the object from underneath the seat, he perceived a white residue, which he thought was cocaine, on the package. *Id.*

McMullin placed Chaidez under arrest and read him *Miranda* warnings from a printed card. *Id.* ¶ 14; *see Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Chaidez and his car were then taken to the Headquarters of State Patrol Troop D in Springfield, Missouri. Suppression Hearing Order ¶ 15. At the Headquarters, McMullin searched inside the car's rear side panels and underneath its rear seat; the search produced fifty bricks of cocaine, each with a mass of approximately one kilogram. *Id.* ¶ 16, 17.

At the Troop D Headquarters, Chaidez was questioned for approximately one hour, in English, by Highway Patrol Sergeant John J. Bickers and by a special agent of the Drug Enforcement Administration. Neither investigator reminded Chaidez of his Fifth Amendment rights. *Id.* ¶ 18, 19, 20.

When the interview concluded, Trooper McMullin and Highway Patrol Sergeant Jack Merritt took Chaidez to the jail in Greene County, Missouri. During the trip, which took approximately fifteen minutes, Sergeant Merritt, who was dressed in civilian clothes and was unarmed, asked how much Chaidez had been paid to drive the car carrying the cocaine. *Id.* ¶ 20. When Chaidez said that he had received $2,500, Sergeant Merritt expressed his surprise that Chaidez had been paid such a meager sum to transport such a large amount of cocaine. Chaidez then stated that he thought that the car had contained only seven kilograms of cocaine. *Id.*

At the suppression hearing, both Chaidez and the Government presented evidence concerning Chaidez's comprehension of written English. Although Chaidez stipulated that he "can communicate orally in English," *id.* ¶ 27, the defense presented evidence that Chaidez had, at best, a limited ability to understand written English. The Government, in contrast, argued that Chaidez was merely feigning an inability to read English.

Chaidez testified that he could not read English, and a deacon at Chaidez's church said that Chaidez had repeatedly asked for assistance in filling out various legal forms written in English. *Id.* ¶ 24. Furthermore, Chaidez's brother stated that, in his opin-

ion, Chaidez could not read English. *Id.* ¶ 26. Several other witnesses also testified that they did not think that Chaidez could read English.

For the Government, a Missouri State Probation Officer testified that he had seen Chaidez reading a document and that Chaidez's attorney told Chaidez to stop reading because Chaidez's defense was based, in part, upon the argument that he could not read English. *Id.* ¶ 21. The prosecution also introduced a legal pleading that Chaidez had written in English. *Id.* ¶ 32. Chaidez testified, however, that he had merely copied the words from a pleading written by someone else and that he did not understand what the document said. As proof that he had acted merely as a scrivener, Chaidez correctly noted that the two pleadings contained identically misspelled words. *Id.* ¶ 31.

The district court found that Chaidez's "comprehension of the English language is sufficient for him to have given an informed, knowledgeable, and voluntary oral consent to search the vehicle," and that he "voluntarily allowed the officer to view the interior of the automobile's trunk." *Id.* ¶ 33. The court made no findings concerning whether Chaidez could read English or whether McMullin reasonably thought that Chaidez could read English.

The district court rejected Chaidez's Fifth Amendment argument. The court found both that McMullin had read the *Miranda* warnings to Chaidez, *id.* ¶ 14, and that Chaidez's statements were not "made under threat of physical harm or any other type of coercion," *id.* ¶ 29. After the jury convicted Chaidez, the district court imposed a special assessment of $50 and sentenced Chaidez to a prison term of twenty years, to be followed by ten years of supervised release.

### I.

 Even when police officers have neither probable cause nor a warrant, they may search an area if they obtain a voluntary consent from someone possessing adequate authority over the area. *United States v. Matlock*, 415 U.S. 164, 171 & n. 7,

94 S.Ct. 988, 993 & n. 7, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Id.* at 235, 93 S.Ct. at 2052 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. *See id.* at 226, 93 S.Ct. at 2047. In deciding whether a consent was voluntary, courts should require the prosecution to prove voluntariness by a preponderance of the evidence. *See Matlock*, 415 U.S. at 177, 94 S.Ct. at 996.

 The district court found both "that [Chaidez's] comprehension of the English language is sufficient for him to have given an informed, knowledgeable, and voluntary oral consent to search the vehicle[,]" and "that [he] voluntarily allowed the officer to view the interior of the automobile's trunk." Suppression Hearing Order ¶ 33. We review those conclusions under the clearly erroneous standard. *United States v. Archer*, 840 F.2d 567, 573 (8th Cir.), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 354 (1988). Thus, we will "affirm the trial court's decision unless it is not supported by substantial evidence, it evolves from an erroneous conception of the applicable law, or we are left with a firm conviction that a mistake has been made after having considered the entire record." *United States v. Ware*, 890 F.2d 1008, 1011 (8th Cir.1989) (quoting *United States v. Wallraff*, 705 F.2d 980, 987 (8th Cir.1983)).

Chaidez's consent was voluntary if it was "the product of an essentially free and unconstrained choice by its maker," *Bustamonte*, 412 U.S. at 225, 93 S.Ct. at 2047, rather than "the product of duress or coercion, express or implied." *Id.* at 227, 93 S.Ct. at 2047. This determination depends upon the totality of the circumstances in a particular case, including "both the characteristics of the accused and the details of

the interrogation." *Id.* at 226, 93 S.Ct. at 2047.

■ The following characteristics of persons giving consent are relevant when assessing the voluntariness of their consent: (1) their age, *id.* at 226, 93 S.Ct. at 2047; *Haley v. Ohio,* 332 U.S. 596, 599, 68 S.Ct. 302, 303, 92 L.Ed. 224 (1948); (2) their general intelligence and education, *United States v. Watson,* 423 U.S. 411, 425, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976); *Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047; *Payne v. Arkansas,* 356 U.S. 560, 567, 78 S.Ct. 844, 849, 2 L.Ed.2d 975 (1958); *Fikes v. Alabama,* 352 U.S. 191, 196–97, 77 S.Ct. 281, 284, 1 L.Ed.2d 246 (1957); (3) whether they were intoxicated or under the influence of drugs when consenting, *United States v. Rambo,* 789 F.2d 1289, 1297 (8th Cir.1986); (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights, *Watson,* 423 U.S. at 424–25, 96 S.Ct. at 828; *Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system, *Watson,* 423 U.S. at 424–25, 96 S.Ct. at 828; *Laing v. United States,* 891 F.2d 683, 686 (8th Cir. 1989); *United States v. Carter,* 884 F.2d 368, 375 (8th Cir.1989).

■ In examining the environment in which consent was given, courts should ask whether the person who consented: (1) was detained and questioned for a long or short time, *Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047; (2) was threatened, physically intimidated, or punished by the police, *Watson,* 423 U.S. at 424, 96 S.Ct. at 828; *Bustamonte,* 412 U.S. at 226, 93 S.Ct. at 2047; *Reck v. Pate,* 367 U.S. 433, 442–43, 81 S.Ct. 1541, 1547, 6 L.Ed.2d 948 (1961); *Laing,* 891 F.2d at 686; (3) relied upon promises or misrepresentations made by the police, *Watson,* 423 U.S. at 424, 96 S.Ct. at 828; *Laing,* 891 F.2d at 686; *Carter,* 884 F.2d at 374–75; (4) was in custody or under arrest when the consent was given, *Watson,* 423 U.S. at 424, 96 S.Ct. at 828; (5) was in a public or a secluded place, *id.;* or (6) either objected to the search or stood by silently

while the search occurred, *United States v. Olivier–Becerril,* 861 F.2d 424, 425–26 (5th Cir.1988); *United States v. Espinosa,* 782 F.2d 888, 890–92 (10th Cir.1986); *United States v. Lopez,* 777 F.2d 543, 546–48 (10th Cir.1985).

These factors should not be applied mechanically, because "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow,* —— U.S. ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)). Nevertheless, the factors are valuable as a guide to analysis. After applying them to the facts of this case, we believe that the district court's finding of voluntariness is not clearly erroneous.

Chaidez is an adult, and the district court found, after listening to Chaidez's testimony, that Chaidez's comprehension of English was sufficient to enable him to give an "informed, knowledgeable, and voluntary oral consent." Suppression Hearing Order ¶ 33. That conclusion is bolstered by the fact that Chaidez has stipulated that he "can communicate orally in English." *Id.* ¶ 27. Furthermore, Chaidez does not claim that his judgment was clouded by either drugs or alcohol.

The record contains no indication that McMullin told Chaidez of his right to withhold consent. Moreover, Chaidez testified that he thought that he did not have the right to refuse to authorize the search. Suppression Hearing Tr. at 85. This is a significant, but not determinative, factor cutting against a finding of voluntariness. *Watson,* 423 U.S. at 424, 96 S.Ct. at 828; *Bustamonte,* 412 U.S. at 232–33, 93 S.Ct. at 2050.

Chaidez was not a novice criminal. Before he was stopped by McMullin, Chaidez had been convicted of distributing heroin. This prior encounter with the criminal justice system increased Chaidez's awareness of the rights of accused persons.

Chaidez consented to the search after being questioned only briefly, and he does not allege that he was threatened, physical-

2000<br>

ly intimidated, or punished before he consented. Moreover, Chaidez does not claim he relied upon any promises or misrepresentations made by McMullin.

When Chaidez consented to the search, he was sitting in McMullin's car on the shoulder of a public highway during the day. Because even persons who have been arrested and are in custody can voluntarily consent to a search, *Watson*, 423 U.S. at 424, 96 S.Ct. at 828, we do not believe that the setting for Chaidez's consent was unduly coercive. The Third Circuit considered similar facts in *United States v. Velasquez*, 885 F.2d 1076 (3d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 497 (1990). In *Velasquez*, an individual who had been stopped for a traffic violation and was sitting in a police car consented to a search of her car. The Third Circuit "perceive[d] no coercion or overreaching" on those facts, and the court explicitly observed that "[t]he consent took place on the shoulder of a major highway during daylight hours." *Id.* at 1082. The court also stated that, "[a]lthough Velasquez' movement was curtailed, a traffic stop does not constitute the degree of custody associated with formal arrest in terms of its impact on consent." *Id.* (citing *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). We believe that the reasoning in *Velasquez* is equally applicable here.

Finally, Chaidez's actions during the search support the conclusion that he voluntarily consented. Chaidez opened the trunk for McMullin to examine. This type of cooperation evinces voluntariness. *See Olivier–Becerril*, 861 F.2d at 425–26; *Espinosa*, 782 F.2d at 890–92; *Lopez*, 777 F.2d at 546–48.

After considering the totality of the circumstances surrounding Chaidez's oral consent, we conclude that the district court's finding that Chaidez made a knowing, voluntary consent is not clearly erroneous. This conclusion is significant because a search may be justified by a voluntary oral consent even in the absence of a valid written consent. *United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir.1988);

*Archer*, 840 F.2d at 573. Therefore, we must decide whether Trooper McMullin's search exceeded the scope of the oral consent he received from Chaidez.

## II.

A consensual search may not legally exceed the scope of the consent supporting it. *Walter v. United States*, 447 U.S. 649, 656–57, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410 (1980); *Ware*, 890 F.2d at 1011. Chaidez argues that the cocaine should have been excluded because he had authorized only a search of the trunk and because the cocaine was not found there.

### A.

The record contains conflicting evidence regarding the scope of Chaidez's oral consent. On direct examination at the suppression hearing, McMullin testified that he asked Chaidez for permission to "look[ ] in his car." Suppression Hearing Tr. at 6. The cross-examination of McMullin produced statements of a similar breadth:

Q. ... [I]s it not true that at that time you asked my client if you could look *into the trunk of his car and the car*?

A. Yes, sir.

Q. At any time orally did you ask my client if you could tear the backing out [sic] the lining of the trunk of the car, or the side panels from the interior of the car?

A. No, sir.

Q. Your only comment to him was may I look *into your car*, is that correct?

A. That's correct, sir.

*Id.* at 24 (emphasis added).

On the other hand, Chaidez stated that he had orally authorized only a search of the trunk. *Id.* at 91–92. The conflicting testimony created a credibility question to be resolved by the district court. That court, accepting McMullin's testimony, found that "McMullin asked the defendant if it would be okay for him to look in the car," Suppression Hearing Order ¶ 8, that Chaidez gave an informed, knowledgeable, and voluntary oral consent to search the

vehicle, and that Chaidez voluntarily allowed McMullin to view the interior of the trunk, *id.* ¶ 33. Those findings are not clearly erroneous. *See Ware*, 890 F.2d at 1011 (using clearly erroneous standard to review a finding about the scope of consent). We believe that the consent authorized McMullin not only to look into the car's passenger compartment, but also to run his hand in the opening on the side of the raised cushion and underneath the seat.

This conclusion is buttressed by Chaidez's apparent failure to object during the search. Chaidez had opened the trunk for McMullin, and nothing in the record indicates that Chaidez protested when the search continued to the passenger area or when McMullin searched beneath the seat. According to Chaidez's testimony at the suppression hearing, he thought that he did not have the right to withhold consent, because he did not own the car that he was driving.[2] Suppression Hearing Tr. at 85. Nevertheless, Chaidez's behavior during the search is relevant when assessing the scope of the consent, just as it was relevant when considering the voluntariness of the consent. Moreover, our conclusion that the search did not exceed the scope of the consent is consistent with decisions that have upheld even more intrusive searches upon similar facts.

The Tenth Circuit's decision in *Espinosa*, 782 F.2d 888, is particularly apposite. The defendant in *Espinosa* authorized a law enforcement officer to "look through" the defendant's car. *Id.* at 892. Armed with that consent, the officer first inspected the car's trunk. He then "looked in the glove box, under the dashboard, [in] the heater area, and under the front seats." *Id.* He later examined the back seat rug and back seat. Next, he removed the back seat, "spotted two screws missing from the car's left rear quarter panel" and noticed that other screws on the panel were loose. *Id.* Because of the missing screws, "[t]he panel was loose on one corner." *Id.* The officer pulled back the loose corner, peered inside

the quarter panel, and discovered cocaine there. *Id.*

The defendant claimed that the officer's "request for permission to 'look through' defendant's automobile was so vague that defendant may not have understood the extent of the search." *Id.* In rejecting that argument, the court stated that:

> Defendant stood beside his car expressing no concern during this thorough and systematic search.... At no time did defendant attempt to retract or narrow his consent. *Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent.*

*Id.* (emphasis added). *See also Olivier–Becerril*, 861 F.2d at 425–26 (stating that the defendant was "cooperative during the search" and upholding a search in which police punched a hole in a car's trunk); *Lopez*, 777 F.2d at 546–48 (holding that the defendant, who "stood by and watched as the officers searched the vehicle," consented to a search during which officers checked under a car's seat, looked in the car's glove compartment, and removed a speaker by unscrewing it from a panel).

### B.

Because Chaidez gave McMullin permission to "look" into the car, McMullin's use of his hands to search underneath the seat is the most troublesome aspect of the case. Chaidez, however, has not specifically raised that issue. Furthermore, we think that his search underneath the seat is also justified because, by that time, McMullin could have formed a reasonable articulable suspicion that the vehicle contained both contraband and weapons. We realize that this issue was not considered by the district court, but it is appropriate for consideration here because we decide de novo whether a reasonable articulable suspicion exists in a particular case. *See United*

---

**2.** The record does not clearly indicate where Chaidez was located after he unlocked the trunk. Chaidez said that when he closed the trunk, McMullin left and opened the front door.

Suppression Hearing Tr. at 91. McMullin said that when he removed the brick from under the seat, he thought that Chaidez was in the patrol car. Suppression Hearing Tr. at 31.

*States v. Campbell*, 843 F.2d 1089, 1092 (8th Cir.1988).

While inspecting the trunk, McMullin noticed that "a black plastic covering" upon the back of the car's rear seat "was torn loose in several places." Suppression Hearing Tr. at 9. Becoming suspicious, he looked into the car's passenger compartment and discovered that there were loose or missing screws on the car's side panels and rear seat. He also saw that the seat's bottom cushion was not tightly down in its normal position and that there was an opening on each side of the cushion.

We are satisfied that when McMullin combined those observations with the knowledge he possessed as a trained law enforcement officer, he could have formed a reasonable articulable suspicion that the vehicle contained both contraband and weapons. *See Sokolow*, 109 S.Ct. at 1585–87 (discussing standards for determining whether a reasonable articulable suspicion could arise from a set of facts). McMullin is an experienced law enforcement officer, and the information available to him before he searched under the seat "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The facts observed by McMullin might have seemed "innocent to the untrained observer." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 651 (1988). Nevertheless, an experienced law enforcement officer would know that drug couriers do not often leave their contraband "strewn across the trunk or floor of a car," *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 2170, 72 L.Ed.2d 572 (1982), and that they frequently hide drugs beneath car seats or inside the cavities in a car's panels. *See, e.g., Olivier–Becerril*, 861 F.2d at 425 (drugs in secret compartment under trunk); *Espinosa*, 782 F.2d at 892 (drugs hidden inside side panel by car's rear seat); *Lopez*, 777 F.2d at 546 (drugs in panel behind stereo speaker).

McMullin had no conclusive proof that Chaidez was smuggling drugs. However, the Supreme Court in *Sokolow* instructed us that "[t]he process [of deciding whether a reasonable articulable suspicion exists] does not deal with hard certainties, but with probabilities." 109 S.Ct. at 1585 (quoting *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695). The Court also stated that a reasonable articulable suspicion consists in "considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* 109 S.Ct. at 1585. As *Sokolow* makes clear, we must consider the totality of the circumstances in this case, *id.*, while remembering that even facts that seem innocent when considered separately can sometimes produce a reasonable suspicion when viewed as part of the mosaic of information confronting the officer. *Id.* at 1587. In this case, the torn backing, the loose or missing screws, and the raised seat could have produced a reasonable articulable suspicion that the car contained drugs. Moreover, the reasonable suspicion that Chaidez was smuggling drugs could also have engendered a reasonable suspicion that the car contained weapons, since guns are considered essential tools of the drug trade. *See United States v. Matra*, 841 F.2d 837, 842 (8th Cir.1988) (discussing the connection between drug transactions and weapons); *see also United States v. Salas*, 879 F.2d 530, 535 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 507, 107 L.Ed.2d 509 (1989); *United States v. Gilliard*, 847 F.2d 21, 25 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); *United States v. Trullo*, 809 F.2d 108, 113 (1st Cir.), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987).

Because McMullin possessed a reasonable articulable suspicion that the car contained weapons, he could search for weapons in the car. *Michigan v. Long*, 463 U.S. 1032, 1045–52, 103 S.Ct. 3469, 3479–82, 77 L.Ed.2d 1201 (1983). Reaching under the seat revealed not weapons but cocaine, and that cocaine is admissible. *Id.* at 1050. The next question is whether the cocaine that was hidden inside the car's panels is admissible.

## III.

When McMullin reached under the seat, he found a brick-shaped object covered by plastic and coated with a white residue, which he believed to be cocaine. McMullin then had probable cause to believe that there was cocaine in the car, and the probable cause was sufficient to justify the warrantless search of the entire car. *Ross,* 456 U.S. at 804–24, 102 S.Ct. at 2162–72. The search was permissible even though it occurred after Chaidez had been taken away from the scene and after the car had been towed to the police garage. *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *Florida v. Meyers,* 466 U.S. 380, 382, 104 S.Ct. 1852, 1853, 80 L.Ed.2d 381 (1984) (per curiam); *Ross,* 456 U.S. at 807 n. 9, 102 S.Ct. at 2163 n. 9; *Michigan v. Thomas,* 458 U.S. 259, 261–62, 102 S.Ct. 3079, 3080–81, 73 L.Ed.2d 750 (1982) (per curiam); *Chambers v. Maroney,* 399 U.S. 42, 47–52, 90 S.Ct. 1975, 1979–81, 26 L.Ed.2d 419 (1970).

## IV.

Chaidez argues that his inculpatory statements should have been suppressed because: (1) he was not read the *Miranda* warnings; (2) he did not effect a valid waiver of his Fifth Amendment rights; and (3) his statements were given in a coercive atmosphere. The district court found that Chaidez was informed of his Fifth Amendment rights and that he made his inculpatory statements in a non-coercive environment. After reviewing the record, we conclude that these findings are not clearly erroneous. *See United States v. Jorgensen,* 871 F.2d 725, 728–30 (8th Cir.1989) (reviewing district court's findings under the clearly erroneous standard); *see also United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir.1988) (same).

## V.

Finding no error, we affirm the judgment of the district court.