# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1054

_____

United States of America,          *
                                   *
          Appellee,             *
                                   *   Appeal from the United States
       v.                           *   District Court for the
                                     *   District of Nebraska.
Darryl L. Winborn,              *
                                     *       [PUBLISHED]
         Appellant.           *

_____

Submitted: June 19, 2003

Filed: September 18, 2003

_____

Before BOWMAN, BEAM, and RILEY, Circuit Judges.

_____

PER CURIAM.

Darryl Winborn was convicted of conspiracy to distribute cocaine and possession of cocaine after he was discovered transporting some five kilograms of the drug. See 21 U.S.C. §§ 841(a)(1) & 846 (2000). Winborn appeals his sentence, arguing that the District Court[1] erred when it denied his motion to suppress the drugs and when it declined to award him a two-level minor participation reduction in his base offense level. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

Winborn was traveling aboard a Greyhound bus from Los Angeles to New York City. The bus stopped at the Omaha Greyhound bus station, where members of the Nebraska State Patrol's Commercial Interdiction Unit were working. In one of the luggage bays beneath the bus, Officer Richard Lutter found only one bag. The bag had a hard bottom, soft sides, was only partially full, and was new. The bag also had only one piece of identification on it, the computer-generated tag issued by Greyhound, which contained the name of the passenger it was issued to (Winborn). Officer Lutter lifted the bag by its handle and determined it was unusually heavy given the fact that it was only partly full. Lutter then placed his hand on the bag and placed his weight on it as he leaned into the bin to examine the luggage in the bin on the opposite side of the bus. This action generated what Lutter termed a smell that was "not familiar," but that was not indicative of narcotics. He then examined the computer tag and determined that the bag originated in a known "source area," San Jacedro, California. Lutter, who was in plain clothes and was not displaying his firearm, also noticed that Winborn, who was outside the bus, was watching him inspect the bag. Lutter was joined by other plain-clothes officers who tested the bag's weight, looked for identification, and discussed using a dog to check for narcotics. The officers also noted that Winborn was watching their inspection of his luggage and that, when the officers made eye contact with Winborn, he walked away. Lutter then spoke to Winborn, presented his badge and identification, informed Winborn that he was not under arrest, and asked if Winborn would be willing to speak with him; Winborn agreed. Thereafter, Winborn provided identification and his bus ticket and said he was going to New York to see a friend and to visit ground zero.[2] After explaining the reasons for his presence, Lutter asked if Winborn would consent to have his bag searched and Winborn again agreed. The officers searched the bag and found approximately five kilograms of cocaine in it.

---

[2]"Ground zero" is the term commonly used to describe the area where the twin towers of the World Trade Center stood prior to the terrorist attack on September 11, 2001.

We review the District Court's findings of fact related to a motion to suppress for clear error and its conclusions of law de novo. United States v. Gwinn, 191 F.3d 874, 877 (8th Cir. 1999). The District Court determined that although Officer Lutter's 'feeling up' of the bag prior to the consented-to search was itself a "search" that violated Winborn's Fourth Amendment rights, Winborn's freely-given consent to the search that produced the drugs cured any taint from the previous impermissible search. The United States urges that the initial investigation of Winborn's bag was not an illegal search and that we should affirm on that ground. See Jaffke v. Dunham, 352 U.S. 280, 281 (1957) (per curiam) (noting that a successful party may have its verdict sustained on any ground supported by the record even if the issue was not raised in a cross appeal). Although we are not convinced that the District Court was correct when it determined that the initial investigation violated Winborn's Fourth Amendment rights, we need not (and do not) address this issue because, in any event, we conclude that the District Court properly held that Winborn's consent to the later search cured any taint from the first search.

To reach our conclusion that Winborn's freely-given consent to search his bag cured any taint, we must first consider several factors—Winborn's age, his education level, his knowledge of his Miranda rights, and whether he was intoxicated—to determine whether he voluntarily gave his consent. United States v. Chaidez, 906 F.2d 377, 381 (1990). None of these factors suggest that Winborn's consent was not voluntary for he: is in his forties; completed high school, took several college courses, and served in the military; has a long-standing association with the criminal justice system and is familiar with his Miranda rights; and was not intoxicated on the day in question. As we must, we next consider whether several other factors—the temporal proximity between the illegal search and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct—allow us to conclude that the taint of any illegal search has been cured. Brown v. Illinois, 422 U.S. 590, 603–04 (1975). Here, the initial search found unlawful by the District Court and Winborn's consent to the later search occurred close in time. We have previously observed that "[t]emporal proximity weighs in favor of  voluntariness."

United States v. Moreno, 280 F.3d 898, 901 (8th Cir. 2001). There are no intervening circumstances that support or detract from our conclusion that Winborn's consent was freely given. In the circumstances of this case, we think their absence amounts to very little for Winborn's consent was clear. He first agreed to speak with the officers after he was told that he was not under arrest and that he was free to leave and, in short order, he agreed to have his bag searched. Finally, the officers' actions in this case were not for any unlawful purpose and were decidedly not flagrant. In these circumstances, even if there was a prior illegal search, Winborn's freely-given consent purged the taint and the District Court properly denied his motion to suppress. See, e.g., United States v. McGill, 125 F.3d 642, 644–45 (8th Cir. 1997), cert. denied, 522 U.S. 1141 (1998).

Finally, Winborn contends that he was entitled to a two-level, minor-participation reduction in his base-offense level. See U.S.S.G. § 3B1.2 (2002). A district court's interpretation of the sentencing guidelines is subject to de novo review while its findings of fact are reviewed for clear error. United States v. Auginash, 266 F.3d 781, 785 (8th Cir. 2001). Whether Winborn was a minor participant is a factual question that we review for clear error. United States v. Harris, 974 F.2d 84, 86 (8th Cir. 1992). In this case, the District Court's conclusion that Winborn did not qualify for the minor-participant departure was not clearly erroneous. Winborn was arrested on what he admitted was his sixth trip transporting narcotics in bulk. In addition to transporting as much as thirty kilograms of drugs on these trips across the country, Winborn also collected payment for the drugs when he delivered them to the intended recipients and admitted he was aware there were at least four other individuals who were transporting similar amounts of drugs in furtherance of the conspiracy (additional amounts of narcotics that Winborn arguably could have been, but was not, held responsible for in the District Court's determination of his sentence). Winborn was not a minor participant and was not entitled to a two-level reduction in his base-offense level.

For the reasons stated, the judgment of the District Court is affirmed.

_____