# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1037

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of North Dakota. |
| | * | |
| Arnaldo Losoya Mancias, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 15, 2003
Filed: November 28, 2003

_____

Before MORRIS SHEPPARD ARNOLD and HANSEN, Circuit Judges, and READE,[1] District Judge.

_____

READE, District Judge.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, sitting by designation.

After the district court[2] denied his motion to suppress evidence, Arnaldo Losoya Mancias ("Mancias") entered a conditional guilty plea to possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and to criminal forfeiture of $2,225.00 under 21 U.S.C. § 853(p). The district court[3] sentenced Mancias to 80 months imprisonment. On appeal, Mancias argues the district court erred in denying his motion to suppress evidence and in denying his motion to dismiss the prosecution for violations of the Speedy Trial Act. For the reasons discussed below, we affirm.

## I.

Shortly after midnight on April 28, 2002, North Dakota Highway Patrolman Jody Skogen ("Skogen") received a report that an intoxicated driver was operating a motor vehicle in a remote area of North Dakota. While investigating the report, Skogen observed a vehicle proceeding east on Highway 52 near Harvey, North Dakota. The vehicle's tires were on the centerline. After turning his patrol car around to follow the vehicle, Skogen activated the video camera mounted on the windshield of his patrol car. Skogen observed the vehicle swerve and enter the oncoming lane of traffic. Skogen stopped the vehicle.

When asked to step out of the vehicle and to produce identification, the driver complied. Based on the identification presented to him, Skogen determined Mancias to be the driver of the vehicle. After being informed he was stopped for erratic driving, Mancias attributed such driving to being sleepy. When asked about his intended destination, Mancias gave details which conflicted with Skogen's

[2]The Honorable Patrick A. Conmy, United States District Court Judge for the District of North Dakota.

[3]The Honorable Daniel L. Hovland, United States District Court Judge for the District of North Dakota.

knowledge of the area. Skogen patted Mancias down and asked him to sit inside his patrol car. While verifying whether Mancias had a valid driver's license, Skogen informed Mancias that he would receive a citation for "care required." After he learned Mancias had a valid Minnesota driver's license and a suspended North Dakota driver's license, Skogen informed Mancias that he would receive an additional citation for driving with a suspended license. After telling Mancias that he would not be allowed to drive, Skogen offered to drive Mancias to Harvey, North Dakota where he could spend the night. Skogen indicated he would direct another officer to follow them in Mancias' vehicle to Harvey, North Dakota. Mancias agreed to this arrangement.

Skogen placed Mancias under arrest for driving under a suspended North Dakota driver's license. Skogen informed Mancias that he would be jailed if he could not post a cash bond of $200.00. Meanwhile, Wells County Deputy Sheriff Hoyt ("Hoyt") arrived to assist Skogen. In order to move things along more quickly, Skogen continued the paperwork while Hoyt conducted a search of Mancias' vehicle. During the course of his search, Hoyt noticed the rear seat of the vehicle was not bolted down. When Hoyt put his weight on the rear seat, the backrest of the rear seat slid out of position. Hoyt moved the backrest and noticed a cutout. Looking through the cutout and into the trunk of Mancias' vehicle, Hoyt saw several suspicious-looking bundles.

While Hoyt was conducting his search, Skogen finished the necessary paperwork, conducted an alcohol-screening breath test and collected the $200.00 cash bond. As Mancias stepped out of the patrol car to receive a final pat down, Hoyt approached Skogen and Mancias. Hoyt informed Skogen there was something in the trunk area of the vehicle that they needed to check out. Upon hearing what Hoyt had to say, Skogen returned to Mancias to pat him down and to place handcuffs on him. After putting Mancias in the rear seat of the patrol car, Skogen asked Mancias on at least two separate occasions if he would consent to a search of his vehicle. Each time

-3-

Mancias consented to the search. After securing Mancias inside the patrol car, Hoyt and Skogen continued the search of the vehicle pursuant to Mancias' consent. Skogen observed a digital scale on the rear seat and the cutout behind the backrest. Ultimately, the officers seized twenty-six pounds of marijuana from the trunk of Mancias' vehicle.

As a result of the events that occurred on April 28, 2002, the government filed a one-count criminal complaint against Mancias in the district court on June 17, 2002. The complaint charged Mancias with possession with intent to distribute twenty-six pounds of marijuana in violation of 21 U.S.C. § 841(a)(1). Officials arrested Mancias on June 19, 2002, and Mancias initially appeared before a United States Magistrate Judge on June 21, 2002. The magistrate judge conducted a detention hearing on June 25, 2002 and a preliminary hearing and arraignment on July 2, 2002. In its July 3, 2002 pretrial order, the magistrate judge set August 23, 2002 as the date by which to file any pretrial motion. On July 19, 2002, the government filed a two-count indictment ("Indictment"). The counts charged: (1) possession with intent to distribute approximately twenty-six pounds of marijuana in violation of 21 U.S.C. § 841(a)(1) ("Count I"); and (2) criminal forfeiture of $2,225.00 under 21 U.S.C. § 853(p) ("Count II"). On August 7, 2002, the district court set September 26, 2002 as Mancias' trial date.

Mancias filed a motion to suppress evidence on August 26, 2002. On September 13, 2002, Mancias also filed a motion to dismiss the prosecution for violations of the Speedy Trial Act. Without conducting an evidentiary hearing, the district court denied Mancias' motion to dismiss on September 23, 2002. That same day, the district court arraigned Mancias on Count II of the Indictment and conducted an evidentiary hearing regarding Mancias' motion to suppress. On September 24, 2002, the district court denied Mancias' motion to suppress.

On September 26, 2002, Mancias entered a conditional guilty plea. By doing so, Mancias preserved his right to appeal the district court's denial of his motion to dismiss and motion to suppress. On December 12, 2002, the district court entered judgment against Mancias. This appeal followed.

## II.

When reviewing a district court's ruling on a motion to suppress evidence, we will affirm a denial "unless we find that the decision is unsupported by the evidence, based on an erroneous view of the law, or the [c]ourt is left with a firm conviction that a mistake has been made." United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998) (quoting United States v. Estrada, 45 F.3d 1215, 1217-18 (8th Cir. 1995)). We review the district court's finding of voluntary consent for clear error. United States v. Zamoran-Coronel, 231 F.3d 466, 468 (8th Cir. 2000) (citing United States. v. Pena-Saiz, 161 F.3d 1175, 1177 (8th Cir. 1998)).

Mancias claims the district court erred in denying his motion to suppress the twenty-six pounds of marijuana found in the trunk of his vehicle. Both parties agree Mancias gave the officers consent to search his vehicle. Mancias contends, however, that the totality of the circumstances surrounding his consent render it involuntary because at the time he gave his consent: (1) he was suffering from extreme fatigue; (2) he was handcuffed and sitting in the back of the patrol car; and (3) he was not advised of his Miranda rights.

Consent to search is voluntary if it is "'the product of an essentially free and unconstrained choice by its maker . . . rather than the product of duress or coercion, express or implied.'" United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). The voluntariness of consent is a question of fact to be determined by examining the totality of the circumstances in a given case, including "'both the characteristics of the accused and

the details of the interrogation.'" Id. at 380-81 (quoting Bustamonte, 412 U.S. at 226). The following factors relating to the person giving consent may be relevant in determining the voluntariness of consent:

> (1) the defendant's age; (2) the defendant's general intelligence and education; (3) whether the defendant was under the influence of drugs or alcohol; (4) whether the defendant was informed of his Miranda rights prior to consent; and (5) whether the defendant had experienced prior arrests so that he was aware of the protections the legal system affords to suspected criminals.

United States v. Alcantar, 271 F.3d 731, 737 (8th Cir. 2001) (citing United States v. Hathcock, 103 F.3d 715, 719-20 (8th Cir. 1997)). Characteristics of "the environment in which consent was given" include:

> Whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

Chaidez, 906 F.2d at 381 (internal citations omitted). The factors set forth above "should not be applied mechanically." Id. at 381. Rather, "the inquiry turns on the totality of the circumstances, which must demonstrate that 'the police reasonably believe[d] the search to be consensual.'" Zamoran-Coronel, 231 F.3d at 469 (quoting United States v. Sanchez, 156 F.3d 875, 878 (8th Cir. 1998)).

Examining Mancias' individual characteristics, we note at the time of the search Mancias was a forty-two year old man with a tenth grade education. The record reflects Mancias generally appeared to cooperate with the officers during both

-6-

the stop and the search. Although Mancias obviously was very tired at the time of the incident, he did not appear to be under the influence of alcohol or drugs, nor did he claim to be. In fact, Mancias submitted to an alcohol-screening breath test and the results came back negative. Mancias points out he was not informed of his Miranda rights prior to giving his consent. However, this does not render his consent invalid because Mancias had at least one prior conviction and therefore had an increased awareness of his rights. See Chaidez, 906 F.2d at 381 (finding officer's failure to inform the defendant of his right to withhold consent did not render consent involuntary where the defendant's "prior encounter with the criminal justice system increased [the defendant's] awareness of the rights of accused persons"); Alcantar, 271 F.3d at 737 ("Although [the defendant] was not advised of his right to refuse consent, that was not in and of itself sufficient to find that consent was not voluntarily given.") (citing United States v. Zapata, 180 F.3d 1237, 1242 (8th Cir. 1999)).

While Mancias argues his fatigue is a factor that tends to show his consent was not voluntary, we disagree. The record clearly shows Mancias was alert enough to answer questions posed to him by Skogen, to post the $200 bond and to agree to have Skogen drive him to a hotel in Harvey, North Dakota. Moreover, prior to obtaining Mancias' consent, Skogen gave Mancias the opportunity to stand outside and breathe fresh air. Although Mancias was extremely tired at the time of his encounter with Skogen and Hoyt, we do not find Mancias' physical state rendered his consent involuntary.

Our examination of the environment in which Mancias gave his consent also supports a finding of voluntariness. Mancias asserts Skogen's actions made the

-7-

environment in which he gave consent coercive and, consequently, his consent should be deemed involuntary. Mancias maintains he cooperated at all times with Skogen, posed no threat to Skogen's safety and paid the bond necessary for release from custody, but Skogen still handcuffed him and placed him in the back seat of the patrol car.

We find there is no evidence in the record that Skogen made any representations or promises to Mancias in return for his consent or that Skogen attempted to intimidate Mancias to obtain consent. The video of the events surrounding Mancias' expression of consent shows that Skogen dealt with Mancias in a polite, professional manner. In addition, while Mancias was seated in the back seat of the patrol car and handcuffed at the time he gave consent, we do not find this made the environment coercive. See Chaidez, 906 F.2d at 379 (holding consent may be voluntarily given even when seated in an officer's patrol car). Our examination of the totality of the circumstances surrounding Mancias' consent leads us to conclude the district court did not clearly err when it held Mancias voluntarily consented to the search of his vehicle.[4]

## III.

Finally, Mancias claims the district court erred by failing to dismiss Count I and Count II of the Indictment pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161,

---

[4]Having determined the search of Mancias' vehicle was constitutionally permissible, we need not consider the constitutionality of the search under other exceptions to the warrant requirement.

et seq.  Regarding Count I, Mancias argues more than seventy days passed between the date of his initial appearance before the magistrate judge and the scheduled trial date.  With respect to Count II, Mancias argues the district court required him to go to trial less than thirty days after his initial appearance.

The facts underlying a district court's order involving alleged violations of the Speedy Trial Act are reviewed for clear error.  United States v. Blankenship, 67 F.3d 673, 675 (8th Cir. 1995).  A district court's legal conclusions are reviewed de novo. Id.  See also United States v. Titlbach, 339 F.3d 692, 698 (8th Cir. 2003) (reiterating standard).

As a preliminary matter, the court notes the record in the instant case is, in a word, confusing.  It reveals that, after conducting a preliminary hearing on July 2, 2002 (held before the Indictment was filed and returned on July 19, 2002), the magistrate judge conducted an "arraignment."  At such "arraignment," the magistrate judge, among other things, asked Mancias: (1) if he received a copy of the criminal complaint; (2) if he waived the reading of the criminal complaint; and (3) to plead to the criminal complaint.  Conducting an "arraignment" on a criminal complaint appears to us to be contrary to the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 5(d)(4) (stating a defendant may be asked to plead only under Rule 10); Fed. R. Crim. P. 5.1 (not requiring or authorizing a defendant to plead to the criminal complaint at the preliminary hearing or authorizing a magistrate judge to take and enter such plea); Fed. R. Crim. P. 10 (making clear an arraignment in a felony case can occur only after an indictment has been returned or a trial information has been filed).  When a grand jury returns an indictment, the previous proceedings before the

magistrate judge are superceded, and the prosecution proceeds because the defendant has been indicted, not because a criminal complaint has been filed. The initial appearance and preliminary hearing procedures generated by the filing of a criminal complaint are designed to make sure the defendant is available to answer if probable cause has been established and if, in fact, an indictment is forthcoming. Although we find the district court never formally arraigned Mancias on Count I of the Indictment, Mancias cannot complain about such failure. We have held that the "absence of a formal arraignment is of little consequence." United States v. Reynolds, 781 F.2d 135, 136 n.2 (8th Cir. 1986). See also Garland v. State of Washington, 232 U.S. 642, 645-47 (1914) (stating failure to comply with arraignment requirements has been held not to be jurisdictional, but a mere technical irregularity not warranting a reversal of a conviction, if not raised before trial). In Garland, the Supreme Court held that as long as the accused had sufficient notice of the accusation and an adequate opportunity to defend himself, the want of a formal arraignment does not deprive the defendant of any substantial right. Garland, 232 U.S. at 645. Here, with respect to Count I, the charge against Mancias remained the same from the filing of the criminal complaint to the return of the Indictment and from the return of the Indictment to the entry of his conditional plea of guilty. In addition, Mancias certainly took advantage of the opportunity to defend himself by filing the motion to suppress and motion to dismiss. Because he had sufficient notice and adequate opportunity to present a defense, Mancias can show no prejudice from the failure to be formally arraigned on Count I of the Indictment.

Pursuant to 18 U.S.C. § 3161(c)(1), Mancias argues ninety-seven days passed between June 21, 2002, the date he initially appeared before the magistrate judge on

-10-

the criminal complaint, and September 26, 2002, the date the district court scheduled as his trial date. We find this argument is without merit. 18 U.S.C. § 3161(c)(1) provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. . . .

The Indictment was filed and made public after Mancias first appeared before a judicial officer. Because Mancias made an initial appearance first, we find the date the Indictment was filed and made public triggers the speedy trial clock. See United States v. Carrasquillo, 667 F.2d 382, 384 (3d Cir. 1981) (discussing language of 18 U.S.C. § 3161(c)(1), reviewing congressional intent and concluding district court erred when it calculated the statutory seventy-day period from the date of the defendant's postindictment arraignment rather than from the date the indictment was filed). See also United States v. Stoudenmire, 74 F.3d 60, 63 (4th Cir. 1996) ("Because the defendant made her initial appearance prior to her indictment, . . . the day of her indictment . . . triggers the [Speedy Trial Act] clock."); United States v. Ortega-Mena, 949 F.2d 156, 158 (5th Cir. 1991) ("[L]ike many other circuits, we construe 'appearance before a judicial officer' to mean a defendant's initial appearance before a judicial officer. See United States v. Mentz, 840 F.2d 315, 325 (6th Cir. 1988); United States v. Owokoniran, 840 F.2d 373, 374 (7th Cir. 1987); United States v. Yunis, 723 F.2d 795, 796 (11th Cir. 1984); United States v. Haiges, 688 F.2d 1273, 1274 (9th Cir. 1982); United States v. Carrasquillo, 667 F.2d 382, 384

-11-

(3d Cir. 1981); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended, 106 F.R.D. 271, 276 (1985)."). Cf. United States v. Dosal, 125 F.3d 864 (Table), 1997 U.S. App. LEXIS 28332 at *5-6, 1997 WL 634091 at *2 (10th Cir. 1997) ("[W]here . . . a defendant makes an appearance [prior to the filing of the indictment and the appearance is] related to charges other than those in the indictment, such appearance does not trigger the statutory timetable."). Accordingly, in this case, the date the Indictment was filed and made public is the "last occurring" date for purposes of calculating the seventy-day period. July 20, 2002, the day after the Indictment was filed and made public, qualifies as the first day of the seventy-day period. See United States v. Dezeler, 81 F.3d 86, 88 (8th Cir. 1996) (citing United States v. Long, 900 F.2d 1270, 1274 (8th Cir. 1990)). The district court set September 26, 2002 as Mancias' trial day. In total, 69 days elapsed between the date the Indictment was filed and made public and September 26, 2002.[5] When the delay associated with the motion to suppress is excluded, the period between the date the

---

[5]Even if we were to compute the time from June 21, 2002 as Mancias argues, no violation of Mancias' right to a speedy trial occurred because certain periods of time are excluded from the running of the seventy-day period, including time taken up by consideration of pretrial motions. See 18 U.S.C. § 3161(h)(1)(F) (excluding "[any] period of delay . . . resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). See also Henderson v. United States, 476 U.S. 321, 332 (1986) (finding motion to suppress to be pretrial motion included within the meaning of 18 U.S.C. § 3161(h)(1)(F)). Mancias filed a motion to suppress on August 26, 2002. After conducting an evidentiary hearing on September 23, 2002, the district court denied Mancias' motion to suppress on September 24, 2002. Taking the twenty-nine excludable days into account, the district court scheduled Mancias' trial to commence within the seventy-day limit.

Indictment was filed and made public and the date the district court set for trial amounts to forty days. See 18 U.S.C. § 3161(h)(1)(F). Therefore, we are satisfied no violation of 18 U.S.C. § 3161(c)(1) occurred.

With respect to the inside time limit within which trial must not commence, Mancias argues the district court required him to go to trial less than thirty days after he initially appeared to be arraigned on Count II. The relevant statute provides:

> Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days <u>from the date on which the defendant first appears through counsel</u> or expressly waives counsel and elects to proceed pro se.

18 U.S.C. § 3161(c)(2) (emphasis added). Acknowledging that it is unclear when the thirty-day period commences, the government argues the Supreme Court's interpretation of 18 U.S.C. § 3161(c)(2) in <u>United States v. Rojas-Contreras</u>, 474 U.S. 231 (1985), can be applied to the facts surrounding this case. In <u>Rojas-Contreras</u>, the Supreme Court stated:

> The statute clearly fixes the beginning point for the trial preparation period as the first appearance through counsel. It does not refer to the date of the indictment, much less to the date of any superceding indictment. Given this unambiguous language, we have no choice but to conclude that Congress did not intend that the 30-day trial preparation period begin to run from the date of filing of a superceding indictment. . . .

> It is clear that Congress knew how to provide for the computation of time periods under the [Speedy Trial] Act relative to the date of an indictment. Had Congress intended that the 30-day trial preparation period of [18 U.S.C.] § 3161(c)(2) commence or recommence on such a date, it would have so provided.

-13-

Rojas-Contreras, 474 U.S. at 234-35. Cf. United States v. Daly, 716 F.2d 1499, 1505 (9th Cir. 1983) (concluding "the thirty-day period should commence only after the indictment or information has been filed and made public and a defendant has first appeared with counsel engaged or appointed to represent him at trial"). In light of Rojas-Contreras, the government asks us to consider several preindictment dates from which to commence the thirty-day period. Alternatively, if we determine Mancias' preindictment appearances through counsel do not commence the thirty-day preparation period and the thirty-day period commenced at the arraignment conducted on September 23, 2002, the government argues Mancias is not entitled to relief because he did not have a trial and he did not suffer prejudice as a result of any violation of 18 U.S.C. § 3161(c)(2).

The Indictment was filed and made public on July 19, 2002. The district court set September 26, 2002 as Mancias' trial date. Mancias filed a motion to suppress on August 26, 2002 and a motion to dismiss on September 13, 2002. On September 23, 2002, the district court conducted a hearing on Mancias' motion to suppress. After such hearing, the district court formally arraigned Mancias on Count II of the Indictment. The district court, in a written order, denied Mancias' motion to dismiss just before the suppression hearing began. After the district court denied the motion to dismiss, Mancias did not move to continue the trial date. Mancias and his counsel appeared for trial on September 26, 2002 and, before a jury was seated and sworn, Mancias elected to plead guilty to Count I and Count II of the Indictment pursuant to a plea agreement which, as described by the district judge, "preserv[ed] the defendant's right to challenge on appeal the legality of the search . . . and, also, any other issue raisable relating to speedy trial or any other procedural irregularity noted

-14-

by counsel or the defendant." Thus, Mancias preserved his objection pursuant to 18 U.S.C. § 3161(c)(2).

Assuming a technical violation of 18 U.S.C. § 3161(c)(2) occurred, we, like the district court, fail to see how Mancias was prejudiced by it. The affidavit attached to the June 17, 2002 criminal complaint included statements regarding the large amount of money found on Mancias at the time of his arrest and the preference of drug traffickers to use cash; the underlying facts of the substantive drug case were developed at the preliminary hearing on July 2, 2002 - a special agent with the United States Drug Enforcement Agency testified that the arresting officer seized approximately $2,200.00 dollars from Mancias; Count II of the Indictment sought the forfeiture of the $2,225.00 in currency seized from Mancias on April 28, 2002; Mancias filed his motion to suppress, which struck at the heart of the government's case, on August 26, 2002; and Mancias filed his motion to dismiss on September 13, 2002. With respect to Count II, Mancias alleged no prejudice before the district court. In his brief and argument to this court, Mancias makes no allegation or showing that his defense to Count II was thwarted in any way by a lack of time to prepare. Instead, Mancias seeks an outright dismissal of the entire prosecution for the alleged naked violation of the thirty-day preparation period contained in 18 U.S.C. § 3161(c)(2).

While the Speedy Trial Act requires an automatic dismissal of the charges for failing to bring a defendant to trial within its seventy-day limit, see 18 U.S.C. § 3162, there is no such automatic statutory remedy for bringing a defendant to trial before thirty days have elapsed from his first appearance through counsel in violation of 18

U.S.C. § 3161(c)(2). Instead, the correct remedy is for the defendant to make and for the district court to grant a motion for continuance in order to permit adequate pretrial preparation if the defendant's ability to defend against the charge has in fact been prejudiced. See Rojas-Contreras, 474 U.S. at 236-37; United States v. Maynie, 257 F.3d 908, 914-15 (8th Cir. 2001); United States v. Vaughn, 111 F.3d 610, 613-14 (8th Cir. 1997); United States v. Simpson, 979 F.2d 1282, 1287 (8th Cir. 1992); United States v. Punelli, 892 F.2d 1364, 1369-70 (8th Cir. 1990); Reynolds, 781 F.2d at 137. Here, Mancias made no motion for a continuance and instead pleaded guilty, thereby choosing to stand on the alleged technical violation to justify his demand for dismissal. Because Mancias did not show any prejudice, the district court did not err when it concluded no violation of 18 U.S.C. § 3161(c)(2) occurred.

Accordingly, the judgment of the district court is affirmed in all respects.

_____