# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2226

_____

United States of America

*Plaintiff - Appellee*

v.

Leo Lewis Yeager

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: December 14, 2017
Filed: April 23, 2018
[Unpublished]

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

PER CURIAM.

Leo Yeager was charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Yeager moved to suppress the firearm, arguing that it had been seized after a warrantless entry into Yeager's home without police having consent to enter it. Following an evidentiary hearing, the

district court[1] denied Yeager's motion to suppress. Yeager entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to suppress. He now appeals that denial. We affirm.

Yeager and his girlfriend, Samantha Zemke, were in the process of moving into a house that Yeager's cousin was renting when Yeager assaulted Zemke. Zemke sought help from a neighbor who called the police. Sheriff Deputy Cory Lampe responded to the call, arrested Yeager, and read him his <u>Miranda</u> rights. During the car ride, Yeager told Deputy Lampe that he had a felony arson conviction and owned a rifle.

Zemke also went to the police station to give her statement about the assault. As she was finishing her statement, Deputy Lampe came into the room and asked her about the gun. She told him it was hanging on a wall in the house. Deputy Lampe testified that when he told Zemke he needed to get the gun out of the house at some point, she said "That's fine. . . . I gotta get stuff out of the house anyway, so when we get done here . . . you can meet us at the house. I can get my stuff out of the house, and then you can get the gun." Zemke wanted Deputy Lampe to accompany her to the house in case Yeager's cousin was there and upset that Yeager had been arrested. Zemke did not have a key to the house, but she told the officers it was fine because Yeager had climbed through the windows to get in before. When they got to the house, both the front door and the front window were locked. An officer found an open window with an air conditioning unit, which Zemke crawled through. She then let the officers in through the front door and led them to the room with the rifle.

---

[1]The Honorable Mark W. Bennet, United States District Judge for the Northern District of Iowa, adopting the report and recommendation of the Honorable C.J. Williams, United States Magistrate Judge for the Northern District of Iowa.

When reviewing the denial of a motion to suppress, "we review the district court's factual findings for clear error and its legal conclusions *de novo*." United States v. Ahumada, 858 F.3d 1138, 1139 (8th Cir. 2017). The district court's finding that Zemke voluntarily consented to the officers' entry is a factual finding that we review for clear error. See United States v. Yousif, 308 F.3d 820, 830 (8th Cir. 2002).

Absent voluntary consent or exigent circumstances, police may not enter a private home to conduct a warrantless search. See United States v. Lakoskey, 462 F.3d 965, 973 (8th Cir. 2006). "[Zemke]'s consent was voluntary if it was 'the product of an essentially free and unconstrained choice by its maker' rather than 'the product of duress or coercion, express or implied.'" See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir. 1990) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225, 227 (1973)). When determining whether a person's consent was voluntary, we consider the totality of the circumstances, which includes the characteristics of the person giving consent and the environment in which consent was given. Id. at 380–81.

The district court's finding of fact is not clearly erroneous. Zemke was twenty-six years old at the time of the incident, had graduated from high school, and had a full time job. She came to the police station voluntarily to give a statement about the assault. She was not in custody or under arrest at any time and testified that she did not believe she was required to be there. Deputy Lampe did not make any promises or misrepresentations to obtain her consent to enter the house; he described the tone of their conversation at the police station as friendly. The district court did not find credible Zemke's testimony that, once at the house and faced with the locked door and window, she told Deputy Lampe that she could come back and get her belongings later. And even if Zemke had said what she claimed she did, the district court did not clearly err in finding that this would not constitute a withdrawal of consent. We

therefore conclude the district court's finding that Zemke voluntarily consented to the officers' entry was not clearly erroneous.

Accordingly, the judgment of the district court is affirmed.

_____